UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANTONIO BECERRA,<br><br>Defendant. | No. 1:18-cr-00080-DAD-BAM<br><br>ORDER DENYING DEFENDANT BECERRA'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(1)(a)<br><br>(Doc. No. 46) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Antonio Becerra. (Doc. No. 46.) That motion is based in part on the purported risks allegedly posed to defendant Becerra by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On April 12, 2018, defendant Antonio Becerra was charged by way of indictment with: one count of possession with intent to distribute 5 grams or more of actual methamphetamine or 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) (Count One); and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)

1

(Count Two).  (Doc. No. 12.)  On February 20, 2019, defendant entered into a plea agreement, agreeing to plead guilty to possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine and a mixture or substance containing a detectable amount of cocaine as charged in a Superseding Information.  (Doc. Nos. 24, 26.)  In doing so, defendant Becerra admitted to the following factual basis for his plea of guilty.  On February 11, 2018, in the County of Kern, defendant possessed with intent to deliver methamphetamine.  (Doc. No. 24 at 10.)  Defendant fled the scene of a car accident and police officers found him in a nearby neighborhood.  (*Id*.)  As police officers approached defendant, he pulled a firearm from his pocket and tossed it aside.  (*Id*.)  Upon arrest, defendant was found to be in possession of "23 individually wrapped baggies and a digital scale. Defendant knew the baggies contained methamphetamine and cocaine, and he intended to distribute these substances to other individuals."  (*Id*.)

It was thereafter determined that under the U.S. Sentencing Guidelines, defendant Becerra's total offense level was 29 and his criminal history category was I, resulting in a sentencing guideline range calling for a term of imprisonment of between 87 and 108 months.  On August 12, 2019, the court considered the sentencing factors set forth in 18 U.S.C. § 3553(a), varied downward from the advisory sentencing guidelines and sentenced defendant Becerra to a term of imprisonment of 54 months in the custody of the U.S. Bureau of Prisons ("BOP"), followed by a term of supervised release of 36 months, and the mandatory $100 special assessment. (Doc. Nos. 24, 41.)  The defendant was allowed to voluntarily surrender to BOP custody at a later date.  (Doc. No. 42.)

Defendant Becerra is currently in the custody of the BOP and serving his sentence at the Federal Correctional Institution, Sheridan ("FCI Sheridan").  (Doc. No. 46 at 10.)  As of the date of this order, defendant Becerra has served approximately a little over 16 months of his 54-month custodial sentence and has a projected release date of July 16, 2023.  (*See* Doc. Nos. 42 at 2; 50 at 3; 50-1 at 3.)

On December 17, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 46.)  On January 8, 2021, the government filed

its opposition to the motion, and on January 13, 2020, defendant filed his reply thereto. (Doc. Nos. 50, 53.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

>> by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

4

defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, 461 F. Supp. 3d 966, 979 (C.D. Cal. 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id.*  Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable."  *Id.*

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

/////

2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

## A.     Administrative Exhaustion

Defendant asserts, and the government does not dispute, that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. No. 50 at 3.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession and turn to the merits of defendant's motion.

## B.     Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of

6

the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[4]

Defendant Becerra argues that extraordinary and compelling reasons warranting a reduction of his sentence to time served now exist because: (1) according to the Centers for Disease Control and Prevention ("CDC"), he faces an increased risk of suffering severe illness from the virus that causes COVID-19 based on his weight, his chronic medical conditions of asthma and high blood pressure, his race, and his sex; (2) he is unable to provide self-care in FCI Sheridan, where he cannot practice effective social distancing or personal hygiene in his close

---

[4] Here, however, because defendant Becerra is only 37 years old (Doc. No. 50), his age and age-related factors do not play a role in consideration of his pending motion.

proximity to other prisoners and guards; and (3) FCI Sheridan is experiencing a consistent outbreak of COVID-19 as the pandemic worsens. (Doc. No. 46 at 8–31.) Further, defendant emphasizes that COVID-19 has spread in numerous BOP facilities, including FCI Sheridan, where five inmates and ten staff members had tested positive for COVID-19 at the time of the filing of his motion. (Doc. No. 46 at 11.) Defendant's counsel argues that the "only relevant conclusion from the data as it stands . . . is that Mr. Becerra, as a Hispanic male who suffers from health issues, is at a heightened risk for serious illness or death if he were to contract COVID-19." (Doc. No. 46 at 24.)

In its opposition, the government contends that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison" is not an extraordinary and compelling reason supporting defendant's early release from imprisonment. (Doc. No. 50 at 7) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). The government also argues that defendant has failed to carry his burden of establishing his eligibility for compassionate release because his health profile "does not match the CDC's criteria for those it identifies as at increased risk for severe complications from COVID-19." (Doc. No. 50 at 7.) The government contends that defendant's medical records show "only that he is overweight . . . and suffers from asthma that is not categorized as 'moderate to severe'" and that his records similarly do not include a diagnosis of hypertension. (*Id.*) The government also disputes the severity of defendant's asthma condition, focusing on the fact that defendant's medical records do not reflect that he has been diagnosed as suffering from "moderate to severe asthma." While the government does not dispute that defendant Becerra has a BMI of 27.7 and that his blood pressure readings "tend to fall into the pre-hypertension category," it argues that even with a diagnosis of hypertension, "Becerra's health conditions are well controlled by the treatment he is receiving from BOP, and they do not rise to the level of categorizing him as being at an increased risk . . . ." (*Id.*)

In reply, defendant asserts that his asthma has been chronic since childhood and that he uses both a rescue inhaler and a steroidal inhaler. (Doc. No. 53 at 3.) Defendant also reiterates his argument that he is overweight and suffers from high blood pressure, both of which the CDC defines as conditions that might put individuals at heightened risk for severe complications if they

8

1 contract the virus. (*Id.*) Lastly, defendant contends that FCI Sheridan "continues to have
2 COVID-19 within its walls, demonstrating the ongoing challenge of containing the virus in the
3 prison." (*Id.*)

4 It is undisputed that according to the CDC "[a]dults of any age" who have certain medical
5 conditions including "moderate-to-severe asthma," "hypertension or high blood pressure," or who
6 are overweight "might be at an increased risk for severe illness from the virus that causes
7 COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and
8 Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
9 medical-conditions.html (last updated December 29, 2020). Here, the court finds that the absence
10 of a formal diagnosis of moderate-to-severe asthma does not mean that defendant Becerra is not
11 at an increased risk of suffering severe illness if he were to contract COVID-19 due to his asthma
12 condition, the symptoms of which have been well documented over the last several years. (*See*
13 Doc. Nos. 46, 53.) The court also finds that the medical records submitted in support of the
14 pending motion establish that defendant has a BMI exceeding 25, classifying him as overweight
15 but not obese. (Doc. No. 55 at 24—sealed.) Defendant has shown that because he suffers from
16 these medical conditions, he is at an increased risk for suffering severe illness if he were to be
17 infected with COVID-19.

18 The court also notes, however, that defendant has not persuasively argued that FCI
19 Sheridan is unable to properly monitor and adequately treat his medical conditions. *See United*
20 *States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12,
21 2020) ("Chronic conditions that can be managed in prison are not a sufficient basis for
22 compassionate release.") (internal quotation marks and citation omitted); *see also United States v.*
23 *McCollough*, No. 15-cr-00336-001-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020)
24 (relevant questions include the adequacy of the care and treatment being provided to the
25 defendant in BOP given his pre-existing conditions and concluding there was no evidence that the
26 circumstances surrounding his health or treatment were extraordinary or compelling). In fact, the
27 medical records filed with the court under seal suggest that defendant Becerra is receiving
28 adequate medical care at FCI Sheridan because he is being prescribed and provided the

medications necessary to treat his health conditions. (Doc. No. 55—sealed). Defendant cites to the decision in *United States v. Jucutan*, No. 1:15-cr-00017, 2020 WL 5801705, at *3 (D. N. Mar. I. Sept. 10, 2020), in which that court stated: "inmates at FCI Sheridan with underlying health conditions, including obesity and asthma, had a substantially diminished ability to provide self-care within the prison." Defendant contends that he is in the same situation as the defendant in *Jucutan*. (Doc. No. 53 at 3.) The undersigned disagrees.[5] Every case involving a motion for compassionate release must be assessed on its individual merits. While it is true that courts have concluded at certain points in time that providing for one's self-care is more difficult at FCI Sheridan in light of the COVID-19 pandemic, unsurprisingly those conditions do not remain static and as explained in detail below, the current conditions at FCI Sheridan do not compel the granting of the pending motion.

Defendant argues generally that COVID-19 can spread rapidly in prisons because prisons, with their tight quarters and unavoidable contact between inmates and staff, are the perfect breeding grounds for the virus. (Doc. No. 46 at 12.) Defendant also cites to statistics showing that as of December 11, 2020, the BOP had reported that there are "7,166 inmates and 1,716 BOP staff who have confirmed positive test results for COVID-19 nationwide" and that 155 federal inmates had died from the virus. (Doc. No. 46 at 8.) In response, the government contends that the BOP has implemented procedures and policies to mitigate the risks of COVID-19 spreading in its facilities, including working with the CDC and confirming that its approach aligns with current CDC guidance. (Doc. No. 50 at 3.) According to the government, there were only thirty-three confirmed active COVID-19 cases among any prisoners or staff members at FCI Sheridan as of January 7, 2021, and thirty-six inmates and staff members reported as having recovered

---

[5] The facts presented to the court in *Jucutan* are significantly different than those presented in this case. In *Jucutan*, the prosecution had conceded at the time of the defendant's sentencing that the defendant did not require rehabilitation. *Jucutan*, 2020 WL 5801705, at *1. Moreover, when the court granted the defendant's motion for compassionate release in that case he had less than eight months left to serve on his 28-month sentence for wire fraud and identity theft in connection with his work as a Recruiting Assistant for the U.S. Army Reserves and a scheme to receive recruiting bonuses of $1,000 to which he was not entitled. *Id*. at 1–2. Finally, in granting compassionate release the district court observed that "the circumstances surrounding this case are exceptional." *Id*. at 1.

10

from the virus. (*Id.* at 4.) In his reply, defendant Becerra argues that FCI Sheridan "continues to have COVID-19 within its walls, demonstrating the ongoing challenge of containing the virus in the prison." (Doc. No. 53 at 3.) Defendant contends that there were twelve inmates and twelve staff members at FCI Sheridan reported with active cases of COVID-19 as of January 13, 2021, the date he submitted his reply brief. (*Id*. at 3–4.)

As of the date of this order on February 11, 2021, the BOP is reporting only 8 inmates and 5 staff members as having active positive tests for COVID-19 at FCI Sheridan. *See* Federal Bureau of Prisons, COVID-19 Coronavirus, available at https://www.bop.gov/coronavirus/ (last visited February 11, 2021). It appears that the number of positive active cases of the virus has steadily declined at FCI Sheridan during the pendency of this motion and that the prison is adequately managing the outbreak of COVID-19 at this time, with no reported deaths and relatively low number of current active cases. *See, e.g., United States v. Colbert*, No. 18-cr-00158-RSM, 2031 WL 22584, *3 (W.D. Wash. Jan. 4, 2021) (discussing the protective efforts to address COVID-19 at FCI Sheridan); *United States v. Taylor-Nairn*, No. 18-cr-5094-BHS, 2020 WL 6799110, *4 (W.D. Wash. Nov. 19, 2020) (noting that there were zero cases at FCI Sheridan in November); *United States v. Patel*, No. 3:17-cr-00114-LRH-CLB, 2020 WL 6785930, *2 (D. Nev. Nov. 18, 2020) ("FCI Sheridan is following BOP required procedures required to control the spread of the virus and, while an outbreak is not entirely preventable, the steps taken by BOP appear to have diminished the threat of a COVID spread at Sheridan.").

Moreover, aside from conclusory statements addressing the subject, defendant Becerra does not describe the conditions of his confinement in FCI Sheridan or claim that they are such that it hinders his ability to provide self-care for his asthma or his high blood pressure. Based on the evidence currently before this court, there is no basis upon which to find that the medical staff at FCI Sheridan is unable to adequately monitor and care for defendant Becerra. In short, the court is not persuaded that the higher risk of severe illness were he to contract COVID-19 that defendant faces, based on his medical conditions, rises to the level of an extraordinary and compelling reason supporting compassionate release given the adequate medical treatment he is receiving. *See, e.g.*, *United States v. Gorai*, No. 2:18-cr-00220-JCM, 2020 WL 1975372, at *3

11

(D. Nev. April 24, 2020) (finding that defendant "has been unable to self-care in a BOP facility already overburdened by its COVID-19 response" where defendant could not receive breathing treatments to clear his lungs as required to treat his asthma, despite repeated requests for them); *United States v. Adeyemi*, No. 06-cr-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) (finding no extraordinary and compelling reason even though a potential lag in medication prescription refills of the defendant's inhaler might impact his ability to self-manage his mild asthma).

It has been recognized by some courts that "the presence of COVID 19 . . . necessitates a more expansive interpretation of what self-care means" and that an inability of individuals at high risk of becoming severely ill from COVID-19 to practice appropriate hygiene, wear a mask, and maintain social distancing may constitute an inability to provide self-care. *See Gorai*, 2020 WL 1975372, at *3 (citation omitted). However, here, defendant Becerra has not persuasively argued that he is being prohibited from taking appropriate precautions to avoid contracting COVID-19 or that his ability to provide self-care at FCI Sheridan is currently substantially diminished. Rather, defendant merely asserts in conclusory fashion that "self-care for a person with his battery of health conditions means taking extra precautions to maintain hygiene, a sterile environment, and physical distance from others [and] Mr. Becerra cannot take these measures." (Doc. No. 46 at 27.) Defendant Becerra has not made any specific allegations regarding, for instance, his lack of access to protective gear or cleaning and sanitizing supplies, or as to his lack of ability to social distance at FCI Sheridan.

Accordingly, the court concludes that defendant Becerra has not demonstrated that his medical conditions, even in combination with the COVID-19-related conditions at FCI Sheridan, support a finding that his ability to provide self-care within the prison setting has been substantially diminished at this time. Thus, defendant has not shown extraordinary and compelling reasons exist that warrant a reduction of his sentence under § 3582(c)(1)(A). Therefore, his motion will be denied.

/////

/////

**C.      Consistency with the § 3553(a) Factors**

Finally, even if defendant Becerra's motion was supported by a showing of extraordinary and compelling reasons supporting his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6] *See Parker*, 461 F. Supp. 3d at 979.

As noted above, defendant Becerra is currently serving a 54-month sentence of imprisonment for possession with intent to distribute controlled substances. (Doc. No. 50 at 3.) At the time of his sentencing on August 12, 2019, the defendant was found to be responsible for 13.4 grams of cocaine and 50.6 grams of methamphetamine, packed in individual bags. (Doc. No. 30 at 5.) With his early acceptance of responsibility, the U.S. Probation Office determined that defendant's total offense level was 29 and that his lack of a criminal history placed him in criminal history category I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 87 and 108 months. (*Id.* at 18.) Based upon consideration of the § 3553(a) factors including his relatively minor criminal history, strong familial support and post-arrest rehabilitation while under Pretrial Services supervision (Doc. No. 30 at 18–19), the probation officer recommended a below guideline range sentence of 70 months imprisonment with a 36 month term of supervised release to follow. (*Id.*) After considering the applicable § 3553(a) factors and the circumstances of this case, the undersigned varied downward from the

/////

/////

---

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

1  advisory guideline range even further then recommended by the U.S. Probation Office,
2  sentencing defendant to a 54-month term of imprisonment.[7] (Doc. No. 42 at 2.)

3  In his pending motion, defendant contends that "[a]lthough the circumstances of the
4  present offense qualified Mr. Becerra for the sentence this Court originally imposed, the
5  sentencing purpose of just punishment does not warrant a sentence that includes exposure to a
6  life-threatening illness." (Doc. No. 46 at 31–32.) Defendant argues that he has no criminal
7  history and remains strongly involved in the lives of his family, despite his incarceration and the
8  restrictions imposed by his current confinement. (*Id*. at 31–32.) Defendant also argues that he
9  lacks a history of violence and any risk associated with his prior conviction can be managed
10 through supervision. (*Id*. at 33.) Moreover, defendant Becerra contends that he has a standing
11 offer to return to work at a local tire shop, which he can work at while looking for a second job,
12 and his family can cover bills, provide transportation, and offer financial support. (*Id*. at 32.)
13 Defendant avers that this will ensure a safe transition into the community. (*Id*.) Lastly, defendant
14 Becerra points out that "he has taken advantage of the ACE classes offered at FCI Sheridan,
15 including parenting, plumbing, building trades, blue planet, media and drawing. He also
16 regularly attends Catholic Mass." (Doc. No. 46 at 10.)

17 The government counters that a reduction of defendant's sentence would not be consistent
18 with consideration of the § 3553(a) sentencing factors. (Doc. No. 50 at 9.) The government
19 argues that "[t]he danger posed to the community from drug offenses has been well-established . .
20 . [and] [t]he circumstances of Becerra's most recent conviction evidence a grave danger—
21 carrying a gun while possessing drugs." (*Id*. at 9–10.) The government underscores the
22 seriousness of defendant's offense, noting that "[t]he logical inference to be drawn from the
23 individually packaged quantities of methamphetamine . . . is that Becerra was . . . a dealer, and he
24 felt compelled to carry a deadly weapon on his person to protect himself and his drugs from other
25 dangerous elements who may cross his path." (*Id*. at 10.) The government argues that

---

[7] As the government notes, defendant Becerra was originally charged in Count One of the Indictment with an offense carrying a five year minimum mandatory sentence, but pursuant to his plea agreement was allowed to plead guilty to a new charge that did not implicate a minimum mandatory sentence. (Doc. 50 at 11.)

defendant's actions in committing the offense do not warrant reducing his sentence effectively to one of only 18 months. (*Id*. at 11.)

In his reply, defendant Becerra counters that he is not dangerous, and a reduction of his sentence would be consistent with the § 3553(a) sentencing factors. (Doc. No. 53 at 4–6.) Defendant argues that "it is critically important that Mr. Becerra did not use or threaten to use the firearm in the case." (*Id*. at 4.) Although he concedes that "a firearm always raises the specter of danger," he contends that he has no arrests or convictions for violence or "any firearm offenses." (*Id*.) Defendant Becerra reiterates in his reply that he had "absolutely no issues or violations while on a rather lengthy period of pretrial supervision." (*Id*.) Finally, defendant concludes that his family has made clear that they will support him in any period of supervision and ensure that he follows court orders, returns to work, and maintains lawful behavior. (*Id*. at 5.)

It is true that defendant Becerra had not previously been convicted of any crime that qualifies for assessment of criminal history points. (Doc. No. 30 at 7–11.) The court also recognizes that defendant has not had any disciplinary issues during his time of incarceration and commends defendant on his rehabilitation efforts, though rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3. (Doc. No. 53 at 5.) Nonetheless, "'[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS-1, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, as of the date of this order, defendant Becerra has served approximately a little less than 17 months of his 54-month sentence or, even with good time credits, approximately 35 percent. (*See* Doc. No. 50 at 3.) As noted above, the sentencing guideline range in this case was between 87 and 108 months, and defendant received a sentence of only 54 months when this court varied significantly downward after fully considering the

15

circumstances, including all of those asserted by defendant now. In the court's view, a reduction of defendant's 54-month sentence effectively to one of not even 18 months would not adequately reflect the seriousness of his offense, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.[8] *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with the § 3553(a) sentencing factors.

/////

/////

/////

/////

/////

---

[8] Defendant requests that the court either reduce his sentence to time served or amend the conditions of his supervised release to require him to serve what would have been the remaining portion of his custodial term on home confinement. (Doc. No. 46 at 33.) First, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5, n.6 & *7. Accordingly, to do as defendant requests, the court would be required to reduce his sentence to one of time served (i.e., 16 months) and modify the conditions of supervised release to require home confinement for 38 months. The court is unwilling to do so for the reasons set forth above. The BOP knows its capabilities to effectively and appropriately care for defendant Becerra in a custodial setting. The court notes defendant's current home detention eligibility date is listed by the BOP as February 3, 2023. If the BOP determines that defendant Becerra should be released to home confinement earlier than that date to serve his sentence under the Attorney General's expanded authority in that regard (*see* fn. 2, above), the court trusts it will do so. The issue that this court resolves is merely whether in its view, under the applicable legal standards governing compassionate release, defendant's sentence should be reduced.

**CONCLUSION**

Because defendant Becerra has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 46) is denied.

IT IS SO ORDERED.

Dated: __**February 11, 2021**__                  _____/s/ Dale A. Drozd_____
                                                                    UNITED STATES DISTRICT JUDGE